In the Matter of the Estate of MARY I. MILLER, Deceased.
ROY K. McKISSICK and Another, Executors, etc., of MARY I. MILLER, Deceased, Appellants; OSWALD P. BACKUS, Respondent.

Fourth Department, March 4, 1931.

*William L. Clay,* for the appellants.

*Oswald P. Backus,* for the respondent in person.

CROSBY, J. On June 11, 1928, respondent was appointed a referee in Surrogate's Court to hear and determine a controversy relating to fees of attorneys for services rendered to the estate of Mary I. Miller, deceased, and report to the surrogate. The order of reference fixed June 22, 1928, as the date for the first hearing. The matter was continued before the referee, adjournments being taken from time to time, for nearly two years, the last hearing being had on May 15, 1930. The referee took over one and a half months to make his decision, which was filed on July 3, 1930. The present controversy is over the question of the fees allowed to the referee. The surrogate at first allowed the referee $10 a day for fifty-two days, a total of $520, and thereafter made a decree modifying the allowance so as to make it $1,300, at the rate of $25 a day. The executors have appealed from this latter decree.

At the time of the referee's appointment section 1545 of the Civil Practice Act provided that, in the absence of agreement, referee's fees should be ten dollars a day. By an amendment, effective September 1, 1928 (Laws of 1928, chap. 846), the amount of referee's fees, in an action or special proceeding brought in a court of record, was changed from ten dollars to twenty-five dollars a day. Concededly, in this case, there was no agreement as to fees. The fees are governed by statute. The appellants claim that the referee is limited to ten dollars a day for his services whether performed before or after the amendment to section 1545, and the respondent claims he is entitled to twenty-five dollars a day for his services whenever performed. I am of opinion that neither contention is correct.

Appellants rely upon the case of *Green* v. *Nassau Bank* (18 Wkly. Dig. 58) to support their contention that the referee was limited to the fees prescribed by the statute in effect at the time the reference was ordered. But when that case was decided section 3331 of the Code was in effect, and that provided: "Where an officer has, when this title takes effect, commenced the performance of a service, for which a fee is allowed by the statutes heretofore in force, he is entitled to the fee so allowed, for the completion of that service, and he is not entitled to the fee for the same, or a corresponding service, allowed by this title."

And that case properly held that the referee could not have the benefit of a statutory advance in fees made after the reference commenced. Section 3331 of the Code was not continued into the present Civil Practice Act.

And in *Reilly* v. *Empire State Improvement Corp.* (251 N. Y. 351), cited by appellants, the referee's work was entirely completed before the statute, raising the fees from ten dollars to twenty-five dollars, became effective, and for that reason the referee was not allowed the increased fees under the amendment of section 1545 of the Civil Practice Act.

No authority has been called to our attention which holds that a referee, in the present state of the statute, is bound to accept ten dollars for services performed after the statute became effective raising the fee to twenty-five dollars.

On the other hand, no authority is found for allowing the referee twenty-five dollars for services performed before the amendment of September 1, 1928. Respondent relies on the cases of *Little* v. *Lynch* (99 N. Y. 112) and *Hebard* v. *City of New York* (137 App. Div. 752), both of which merely hold that a referee is entitled to no fees whatever until he has completed his work and filed his report. Those cases decide when the referee is entitled to fees, not the amount of fees to which he is entitled. Respondent also relies on the authority of those cases, like *Matter of King* (121 Misc. 530), holding that the increased executor's fees, under amendment of section 285 of the Surrogate's Court Act, effective September 1, 1923 (Laws of 1923, chap. 649), are allowable to an executor, appointed before the amendment became effective, and accounting after. The situation arising under the Surrogate's Court Act, governing executor's fees is not analogous to the situation in the instant case, for the fees of an executor must be allowed by the surrogate; none are due nor even fully earned until there is an accounting and allowance by the surrogate and the amount thereof depends, not on the amount of work done, but on the amount of the estate *as shown by the accounting*. A referee's fees are earned when he does the work he undertakes to do. His work is done when he files his report. If he does his work and files his report within the time allowed him by statute he does not have to rely upon the allowance of his fees by the court or anybody else. He can sue the parties for his fees. (*Little* v. *Lynch, supra.*)

A situation, more nearly analogous to the one we have in the instant case, arises when an obligation draws interest, not by agreement by the parties, but by operation of law, as, for instance, on a judgment. In case of a statutory change in the legal rate of interest, the rate of interest, which the judgment draws, changes with the statute. (*O'Brien* v. *Young*, 95 N. Y. 428.)

I reach the conclusion that the referee in the instant case is entitled to ten dollars a day for services performed by him before

September 1, 1928, and to twenty-five dollars a day for services performed thereafter.

That brings us to a consideration of the services performed by the referee. The statute (Civ. Prac. Act, § 1545) states what he shall receive " for each day spent in the business of the [a] reference." From the referee's own statement it appears that he spent fifty-two days in the business of the reference, of which fourteen were spent in studying the case and making his decision. Of the thirty-eight days spent on the trial, in taking 483 pages of evidence, work was actually done on only sixteen days, and a full day's work was done on only ten days. On twenty-two days of the thirty-eight nothing was done excepting to take further adjournments. This matter is before this court as an original proposition, to be considered on its merits. (Surr. Ct. Act, § 309.) It seems reasonably clear that more time was spent on the reference than necessary. The referee should not be allowed fees for the twenty-two days and the same should be eliminated from the account. (See *Finkel* v. *Kohn*, 24 Misc. 367.) That leaves sixteen days on which either all or part of the day was spent in the business of the reference. Two of those days fell before September 1, 1928, and fourteen after. The referee should be allowed ten dollars for each of the two days and twenty-five dollars for each of the fourteen days, in all $370, for work done up to the time the case was submitted.

The fourteen days which the referee states he spent in studying the evidence and making his decision were concededly not very arduous days, for he states that the actual working time was sixty hours. He was studying evidence all of which he had heard as it was presented. No difficult questions of law were involved, for the matter had to do with the value of a lawyer's services. Even assuming that sixty hours were required for the work of reaching a decision, they had better be called ten days rather than fourteen. This liberal allowance of $250, added to the $370 before mentioned, gives the referee, respondent herein, $620.

The decree appealed from should be modified on the law and facts, and as so modified affrmed, with costs to the appellants payable out of the estate.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Decree modified on the law and facts and as modified affirmed, with costs to the appellants payable out of the estate. The finding of fact modified relates to the number of days upon which the computation is based.